103 N.J. Super. 119 (1968)
246 A.2d 728
COUNTY OF UNION, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN T. BENESCH, SUPERINTENDENT, HOUSING AND INSPECTIONS, CITY OF ELIZABETH, NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1968.
Decided September 30, 1968.
*121 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Edward W. McGrath argued the cause for appellant (Mr. William J. McCloud of counsel and on the brief).
*122 Mr. Leonard Rubin argued the cause for respondent (Mr. John P. Higgins, attorney).
The opinion of the court was delivered PER CURIAM.
Defendant appeals from a summary judgment of the Law Division ordering him (a) to issue a building permit to plaintiff to make rectifications, repairs and alterations to the Union County Parking Garage and Juvenile Detention Center, provided plaintiff's plans and specifications filed comply with the building code of the City of Elizabeth; (b) to make the necessary inspections in accordance with the city's building code "as to [sic] rectifications, repairs and alterations proceed," and (c) upon completion by plaintiff of the rectifications, alterations and repairs in accordance with the building code of the city to issue a certificate of occupancy. Defendant's cross-motion for summary judgment in his favor was denied.
The city argues that County of Union is a "superior authority" to City of Elizabeth in the political subdivision hierarchy and, therefore, its building code is inapplicable to rectifications, repairs and alterations of buildings on county-owned property within the city. The city also maintains that a county may not require a municipality to make inspections of county buildings during the progress of construction and thereafter be responsible for adherence by the contractors and agents of the county government to the municipal building code, or one adopted by the city by reference, such as the Standard Building Code of New Jersey. Elizabeth has adopted the latter by reference, pursuant to N.J.S.A. 52:27C-56.
Instead of accepting the city's disclaimer of all authority over the construction and repair of county buildings, the county maintains, as the trial court found, that a county government is required by statute to obtain a building permit from the municipality and, as a consequence, this entails compliance with the local building code, inspections by the city's inspectors and issuance of a certificate of occupancy *123 upon completion of the work in accordance with the building code.
As a general rule, a superior public authority is immune from municipal ordinances. For example, New Jersey Highway Authority was held not subject, in the construction of service areas, to local zoning and building requirements. Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237 (1955). "There is no doubt whatever as to the power of the Legislature to immunize its public Authorities from the provisions of local zoning and building restrictions." Id., at p. 244. So, too, in Hill v. Borough of Collingswood, 9 N.J. 369 (1952), it was held that the Camden County Park Commission was not amenable to the zoning power of the Borough of Collingswood although the park lands were within the municipal boundaries. And in Tim v. City of Long Branch, 135 N.J.L. 549 (E. & A. 1947), the zoning ordinance of the City of Long Branch was held not binding on the National Housing Agency in leasing and remodeling property pursuant to the provisions of a federal act.
Where the immunity from local regulation is claimed to exist in favor of a superior authority, "the presumption is that such immunity was intended in the absence of express statutory language to the contrary." Aviation Services v. Board of Adjustment, Hanover Tp., 20 N.J. 275, 282 (1956).
The trial court found in N.J.S.A. 40:23-6.20, albeit by implication, the necessary statutory language requiring Union County to obtain a building permit from the City of Elizabeth for the proposed rectifications, repairs and alterations to the county garage and juvenile detention center. That statute, adopted as L. 1948, c. 413, provides:
"No county having a population in excess of four hundred thousand inhabitants other than a county of the first class, or the board of chosen freeholders thereof or any of its contractors, shall be required to pay any municipal fee or charge in order to secure a building permit for the erection or alteration of any county building or part thereof from the municipality wherein such building may be located." *124 Concededly, Union County has a population in excess of 400,000 inhabitants and is not a county of the first class.
In adopting L. 1948, c. 413 (N.J.S.A. 40:23-6.20) the Legislature rejected the avowed policy of Senate Bill No. 122 for 1948, which proposed that no county should be required to secure approval of its plans and specifications for the erection or alteration of any county building by the municipality wherein such building may be located, and that no county or contractor doing any work in connection with county buildings should be required to secure a building permit for such work from the municipality. The statement accompanying that bill averred that its purpose was to remove any doubt which might exist concerning the obligation of a county to obtain local building permits.
We agree with the trial court that the legislative intent of N.J.S.A. 40:23-6.20 was to declare the need of a county to obtain a municipal building permit but to eliminate the payment of fees therefore by counties of the class designated. The contemporary failure of the Legislature to adopt Senate Bill No. 122 and its decision to treat the subject by language aimed solely at absolving specified counties from paying a fee for the building permit impel the conclusion that counties must apply for a building permit, and immunity from payment of a fee for the permit has been granted by the Legislature to counties such as Union, within the specified class.
As the trial court properly observed, if counties were not required to obtain any municipal building permit, N.J.S.A. 40:23-6.20 would serve no useful purpose. The trial court said: "Courts cannot impute to the Legislature an intent to enact meaningless legislation. There is a presumption against useless legislation." See cases cited, 98 N.J. Super. 167, at p. 173 (Law Div. 1967).
The parties themselves recognized this interpretation of the statute when this county building was originally constructed. As the record shows, the contractor then applied to the city for a building permit and it was issued. The city charged no fee for the permit in reliance upon advice *125 of the city's attorney that N.J.S.A. 40:23-6.20 precluded the charging of any fee.
In Parking Authority of City of Trenton v. City of Trenton, 40 N.J. 251 (1963), the Supreme Court held that the city was empowered to require payment of a building permit fee from the Parking Authority. N.J.S.A. 40:23-6.20 is cited in this case as an example of a statute providing "for the exemption of certain counties from the requirement of paying a fee for a municipal building permit in connection with the construction of county buildings."
In our view the city's real grievance, as developed at oral argument, lies in that part of the judgment which orders it to make inspections "as the rectifications, repairs and alterations proceed." It is one thing for the court to direct an exercise of the municipal function, but quite another to order how it shall be done.
We agree that, insofar as the affirmative rights of a builder subject to a building code are concerned, the matter of inspections should be left to the discretion of the city official charged with that responsibility. The court will order the exercise of a discretionary function but will not interfere with or control the manner of its exercise. Switz v. Middletown Tp., 23 N.J. 580, 587-589 (1957). A private builder would be entitled to a building permit, if his filed plans and specifications do not violate the building code. He would be entitled to a certificate of occupancy upon completion of the work, if violations of the code are not found to exist. But a private builder would not be entitled to a court order, in the form of a mandamus, commanding the municipal building inspector to make periodic inspections as the work proceeds. A builder has or should have his own architect, engineer and clerk of the works to see to it that the building operation is carried on in accordance with the plans, specifications and building code. The same rules are equally applicable in the construction of a county building.
Our examination of the city's building code with reference to the matter of inspections shows that by section B-124.0 *126 the building official may waive examination of the plans and field inspection of the construction, in whole or in part, for any buildings or construction operation under the procedure therein described. This confirms our view that field inspections by the municipal building inspector ought not to be made mandatory by order of the court. See too section B-113.3 allowing the building official to accept reports of inspections of authoritative and recognized services or individuals.
The judgment under review is modified to provide that defendant shall issue a building permit to the county, if the filed plans and specifications comply with the city's building code, and shall thereafter process the matter under and pursuant to the building code, but without fee to be paid by the county. No costs.