SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State in the Interest of D.M., a Juvenile** (A-30-17) (079999)

**Argued October 22, 2018 -- Decided May 14, 2019**

**PATTERSON, J., writing for the Court.**

The Court considers whether a juvenile can be adjudicated delinquent for endangering the welfare of a child in violation of N.J.S.A. 2C:24-4(a)(1) when the juvenile and his alleged victim are fewer than four years apart in age and the Family Part judge makes no findings of sexual penetration, force, or coercion. The Court also considers the impact of the Family Part's conflicting characterizations, at the adjudication and disposition hearings, of its factual findings regarding the juvenile's conduct.

According to testimony, Z.Y., eleven, stated that fourteen-year-old D.M. had "made [Z.Y.] suck his penis" and told Z.Y. to "put [D.M.'s] penis in his anus." Z.Y. ultimately described three encounters with D.M. at which the conduct allegedly occurred. The State charged D.M. with delinquency based on conduct which, if committed by an adult, would constitute first-degree aggravated sexual assault contrary to N.J.S.A. 2C:14-2(a)(1). At trial, the State had the burden to prove beyond a reasonable doubt the elements of that statute. One of those elements is an act of "sexual penetration."

D.M. requested that the judge consider third-degree endangering the welfare of a child as a lesser-related offense. In order to establish a violation of N.J.S.A. 2C:24-4(a)(1), the State had the burden to prove beyond a reasonable doubt that D.M. engaged in "sexual conduct which would impair or debauch the morals of the child." The State agreed with D.M.'s counsel that there was a rational basis in the evidence for the endangering charge, and consented to the request.

In a written decision, the court made detailed credibility findings. The court found that the State failed to prove sexual penetration and accordingly declined to adjudicate D.M. delinquent on the charge of first-degree aggravated sexual assault. The court found, however, that the State had satisfied its burden of proof with respect to the lesser-related offense of third-degree endangering the welfare of a child. The court found beyond a reasonable doubt that D.M. "exposed his penis to Z.Y., sought Z.Y. to touch his penis with his mouth, and had his penis physically touch Z.Y.'s buttocks." The court found that these acts "would tend to debauch and impair the morals of a child" within the meaning of N.J.S.A. 2C:24-4(a)(1), and adjudicated D.M. delinquent as to that offense.

1

At a disposition hearing, the court stated, in part: "I adjudicated [D.M.] to a third degree, but quite frankly, the elements of the first[-]degree offense were met." The court noted that it had "considered a lesser[-]related offense really as a humanitarian gesture to [D.M.] . . . in light of his lack of a prior record, his extremely devoted grandmother, his trials and tribulations, [and] his active and noble extracurriculars," but that, "if one were to really look at the evidence that was presented and one were to be honest about assessing that evidence, there is no doubt in the eyes of the [c]ourt that the elements of the first[-]degree offense have been made and surely an attempt."

D.M. appealed his juvenile adjudication and disposition. The State and D.M. briefed the issues raised. Neither party requested oral argument. The Appellate Division panel sua sponte ordered the parties to submit supplemental briefs on "whether the lack of a finding of penetration or coercion undermines the delinquency finding of endangering the welfare of a child, in light of the four-year age difference required for a delinquency finding of sexual assault" under N.J.S.A. 2C:14-2(b). 451 N.J. Super. 415, 423 (App. Div. 2017). The State then requested oral argument, and D.M. did not oppose that application. The panel, however, denied the State's request.

The panel reversed D.M.'s delinquency adjudication, based on its resolution of the question it had raised sua sponte. Id. at 426-28. The panel acknowledged that "sexual conduct," which would impair or debauch the morals of the child, was undefined in N.J.S.A. 2C:24-4(a)(1). Id. at 426. It concluded, however, that the Legislature sought to limit the endangering statute, as applied to juveniles, to cases in which the juvenile's conduct also would give rise to a charge of either sexual assault or criminal sexual contact by force or coercion. Id. at 424-25, 428. Noting that coercion was not at issue, id. at 424-25, and citing the sexual penetration element of N.J.S.A. 2C:14-2(a), and the age disparity element of N.J.S.A. 2C:14-2(b), the panel held that "[t]he Legislature did not intend sexual behavior between children close in age not involving penetration, which it specifically exempted from the criminal statutes, to nonetheless be included within the crime of child endangerment," id. at 427.

The Court granted the State's petition for certification. 231 N.J. 553 (2017).

**HELD:** Although the Legislature may decide that N.J.S.A. 2C:24-4(a)(1) should not apply in juvenile proceedings based on conduct such as that at issue here, nothing in the current text of that statute precludes the adjudication in this case. The Court declines to rewrite the statute's plain language in this appeal. However, the Family Part court's adjudication must be reversed because the court's disavowal, at the disposition hearing, of critical aspects of its previously-stated factual findings undermined its determination as to both offenses. In this extraordinary setting, it is unclear whether the State met its burden to prove beyond a reasonable doubt that D.M. violated N.J.S.A. 2C:24-4(a)(1). Accordingly, the Court affirms on other grounds the panel's judgment.

2

1. The panel should have granted the State's unopposed motion for oral argument, and the Court cautions appellate courts in similar settings involving expanded issues to seriously consider granting motions for oral argument, even when no party requested argument when it filed its original brief. (p. 16)

2. The Appellate Division's decision relies on Code provisions set forth in three statutes: the sexual assault statute, N.J.S.A. 2C:14-2; the criminal sexual contact statute, N.J.S.A. 2C:14-3(b); and the endangering the welfare of a child statute, N.J.S.A. 2C:24-4(a)(1). D.M. was charged with first-degree aggravated sexual assault pursuant to N.J.S.A. 2C:14-2(a)(1), under which the State must prove that the juvenile committed an act of sexual penetration on a victim less than thirteen years of age, but need not prove that the juvenile is four or more years older than the victim. Under another section of N.J.S.A. 2C:14-2 cited by the Appellate Division, a juvenile may be adjudicated delinquent if the State proves beyond a reasonable doubt that the juvenile committed an act of sexual contact -- whether or not that contact involved sexual penetration, force, or coercion -- provided that the juvenile charged is four or more years older than the alleged victim. Finally, if the State seeks a delinquency adjudication pursuant to N.J.S.A. 2C:14-3(b) based on the offense defined in subsection (c)(1) of N.J.S.A. 2C:14-2, it must prove that the juvenile committed an act of sexual contact with a victim using "physical force or coercion." In contrast to the offenses cited by the Appellate Division panel, third-degree endangering the welfare of a child requires proof only that the victim is a child and sexual conduct by any person which "would impair or debauch the morals of the child." N.J.S.A. 2C:24-4(a)(1). The phrase "sexual conduct which would impair or debauch the morals of the child" is undefined in the endangering statute, but the Court has observed that "sexual conduct" clearly includes sexual assault and sexual contact. (pp. 17-20)

3. There is no evidence in the endangering statute's plain language that the Legislature intended to incorporate the penetration or age-disparity elements of the sexual assault statute, or the force or coercion elements of the criminal sexual contact statute, into the endangering offense. The Court does not agree that in order for a juvenile, who is fewer than four years older than the victim, to be adjudicated delinquent under N.J.S.A 2C:24-4(a)(1), there must be proof of sexual penetration, force, or coercion. The endangering statute simply makes no mention of the elements cited by the panel. Had the Legislature intended to limit the application of N.J.S.A. 2C:24-4(a)(1) to cases in which the juvenile has also violated specific provisions of N.J.S.A. 2C:14-2 or N.J.S.A. 2C:14-3, as the panel suggests, it would have done so by adding language to that effect. Accordingly, N.J.S.A. 2C:24-4(a)(1) as currently drafted may apply to a juvenile, even when the specific conduct involved does not involve sexual penetration, force, or coercion and the juvenile and alleged victim are fewer than four years apart in age. (pp. 20-23)

4. The contrasting interpretations of N.J.S.A. 2C:24-4(a)(1) advanced in this case signal a need for legislative review of the endangering statute as it applies to juvenile settings such as this appeal. As D.M.'s case illustrates, it would be helpful if the statutory

3

language "sexual conduct which would impair or debauch the morals of the child" provided clearer guidance to courts, counsel, and the public in settings involving sexual conduct by juveniles close in age. Should it choose to do so, the Legislature could amend N.J.S.A. 2C:24-4(a)(1) to clarify its intent with respect to the statute's application to juvenile adjudications. (pp. 23-24)

5. The Family Part judge's credibility assessment and core factual findings -- that D.M. "exposed his penis to Z.Y., sought Z.Y. to touch his penis with his mouth, and had his penis physically touch Z.Y.'s buttocks," but that the State fell short of proving oral or anal penetration -- fully supported the judge's determination on the two offenses considered. Had the court not deviated from its written decision in its later comments, there would be no basis to overturn that determination in this appeal. The court's statement at the disposition hearing, however, directly contravened the findings set forth in its adjudication. The juvenile's personal characteristics are an important factor at the disposition stage, but they do not warrant a "downgrade" of his charges at the adjudication stage, or any other finding inconsistent with the proofs. The court sitting as factfinder in a juvenile adjudication must find the facts that the State has proven beyond a reasonable doubt; it has no authority to nullify its findings in order to achieve a more lenient disposition, or for any other purpose. In this matter, the court disclosed at the disposition that, although the State proved N.J.S.A. 2C:14-2(a)(1)'s sexual-penetration element, the court discounted that proof and adjudicated the juvenile delinquent on the lesser-related offense. That disclosure undermines confidence in both determinations. In its wake, it is simply unclear what facts the court actually found and what facts it did not find. Accordingly, D.M.'s adjudication must be reversed. (pp. 24-26)

**The judgment of the Appellate Division is affirmed on other grounds.**

**JUSTICE ALBIN, concurring,** agrees that D.M.'s juvenile adjudication for endangering must be reversed and that N.J.S.A. 2C:24-4(a)(1) is in need of legislative review but expresses the view that the child endangerment statute was never intended to criminalize consensual sexual experimentation between close-in-age juveniles that does not violate the sexual offense statutes, N.J.S.A. 2C:14-2 and -3. Without such limitations, Justice Albin observes, the endangering statute is vulnerable to a future as-applied constitutional challenge.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion. JUSTICE ALBIN filed a concurrence.**

4

SUPREME COURT OF NEW JERSEY

A-30 September Term 2017

079999

State in the Interest of D.M., a Juvenile

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
451 N.J. Super. 415 (App. Div. 2017).

| Argued | Decided |
| --- | --- |
| October 22, 2018 | May 14, 2019 |

Michele C. Buckley, Assistant Prosecutor, argued the
cause for appellant State of New Jersey (Michael A.
Monahan, Acting Union County Prosecutor, attorney;
Milton S. Leibowitz, Special Deputy Attorney
General/Acting Assistant Prosecutor, of counsel and
on the briefs).

Rochelle Watson, Assistant Deputy Public Defender,
argued the cause for respondent D.M. (Joseph E.
Krakora, Public Defender, attorney; Rochelle Watson,
of counsel and on the brief, and Seon Jeong Lee,
Designated Counsel, on the brief).

Sarah D. Brigham, Deputy Attorney General, argued
the cause for amicus curiae Attorney General of New
Jersey (Gurbir S. Grewal, Attorney General, attorney;
Sarah D. Brigham, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we consider whether a juvenile can be adjudicated

delinquent for endangering the welfare of a child in violation of N.J.S.A.

1

2C:24-4(a)(1) when the juvenile and his alleged victim are fewer than four years apart in age and the Family Part judge makes no findings of sexual penetration, force, or coercion. We also consider the impact of the Family Part's conflicting characterizations, at the adjudication and disposition hearings, of its factual findings regarding the juvenile's conduct.

The State charged fourteen-year-old D.M. with delinquency based on conduct which, if committed by an adult, would constitute first-degree aggravated sexual assault, contrary to N.J.S.A. 2C:14-2(a)(1). The State alleged that D.M. committed acts of sexual penetration against an eleven-year-old acquaintance, Z.Y. With the parties' consent, the Family Part judge also considered the lesser-related charge of third-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(a)(1).

Following the trial, the court found that the State had failed to prove beyond a reasonable doubt sexual penetration, an element of the first-degree aggravated sexual assault charge under N.J.S.A. 2C:14-2(a)(1). The court found that the State had proven the elements of the third-degree endangering offense, including "sexual conduct which would impair or debauch the morals of the child." N.J.S.A. 2C:24-4(a)(1).

At the disposition hearing, however, the court contradicted its earlier findings. The court said that the State had actually met its burden to prove

2

sexual penetration, but that the court instead adjudicated D.M. delinquent on the third-degree charge "as a humanitarian gesture" warranted by the juvenile's personal qualities.

An Appellate Division panel reversed the juvenile adjudication. State in Interest of D.M., 451 N.J. Super. 415, 418 (App. Div. 2017). The panel reasoned that the Legislature did not intend for the endangering statute, N.J.S.A. 2C:24-4(a)(1), to support a delinquency adjudication based on a juvenile's sexual contact with another minor fewer than four years younger than he, in the absence of a finding of sexual penetration, force, or coercion.

We do not concur with the Appellate Division panel's construction of the endangering statute. Although the Legislature may decide that statute should not apply in juvenile proceedings based on conduct such as that at issue here, nothing in the current text of N.J.S.A. 2C:24-4(a)(1) precludes the adjudication in this case. We decline to rewrite the statute's plain language in this appeal.

We conclude, however, that the Family Part court's adjudication must be reversed. When the court, at the disposition hearing, disavowed critical aspects of its previously-stated factual findings and characterized its decision to adjudicate D.M. under the lesser-related offense as a humanitarian gesture, it undermined its determination as to both offenses. In this extraordinary

3

setting, it is unclear whether the State met its burden to prove beyond a reasonable doubt that D.M. violated N.J.S.A. 2C:24-4(a)(1).

Accordingly, we affirm on other grounds the panel's judgment.

## I.

## A.

At the time of the alleged incidents that gave rise to this proceeding, D.M. was one of a group of teenage boys who sometimes spent after-school hours together at a park adjacent to a school.[1]  Z.Y. and his younger brother would sometimes join the older boys in the park, which was located near a business owned by their mother.

One evening, Z.Y. was sharing a bedroom with his younger brother and a seven-year-old boy who was staying at his home.  Checking on her sons and her young guest, Z.Y.'s mother found Z.Y. and the seven-year-old boy sitting together on a bed.  She noticed that Z.Y.'s shorts were "shifted" in a manner that she considered peculiar.  Concerned about what the boys had been doing, Z.Y.'s mother questioned the seven-year-old.  She stated that he told her Z.Y. had "rubb[ed] his penis" on him.  Z.Y.'s mother, upset by the younger child's

---

[1]  We derive our summary of the facts from the transcripts of Z.Y.'s videotaped statement to police, the N.J.R.E. 104 hearing conducted by the Family Part judge to determine the admissibility of Z.Y.'s out-of-court statements under N.J.R.E. 803(c)(27), and D.M.'s trial.

4

revelation, asked Z.Y. "what was he doing, and where did he get it from." According to his mother, Z.Y. responded, "[M]ommy, the boy did it to me." At that time, Z.Y. did not identify the "boy" to whom he referred.

According to the testimony of Z.Y.'s adult sister, who lived in the family home, Z.Y. was distraught about the incident and his mother's reaction to it. She stated that she took Z.Y. to a different room and questioned him, and that Z.Y. identified D.M. as the boy to whom he had earlier referred. By his sister's account, Z.Y. stated that D.M. had "made [Z.Y.] suck his penis" and that D.M. had told Z.Y. to "put [D.M.'s] penis in his anus."

Z.Y.'s parents and sister took him to the police station, where he gave a videotaped statement to a police officer. Z.Y. recounted to the officer two incidents, both of which allegedly occurred in an outdoor stairwell of the school adjacent to the park. He stated that in the first incident, D.M. led him down the stairwell, which provided access to the school's basement. Z.Y. told the officer that D.M., with his pants down, asked Z.Y. to "suck his thingy," and that he "just did it for . . . two seconds" before leaving the stairwell.

Z.Y. told the officer that a second alleged incident occurred two weeks after the first in the same stairwell. He said that on that occasion, D.M. repeatedly asked him to "suck [his] thingy." Z.Y. told the officer that he complied with D.M.'s request, "but [he] did it for only a second." Z.Y. said

5

that it made him feel "a little bit weird" and that he quickly left the stairwell. Z.Y. said that the next day, D.M. asked him to go to the stairwell with him again, but that he had refused.

B.

Pursuant to N.J.S.A. 2A:4A-30, the State charged D.M. with delinquency based on conduct which, if committed by an adult, would constitute first-degree aggravated sexual assault, contrary to N.J.S.A. 2C:14-2(a)(1).

About one week before Z.Y. testified at trial, Z.Y. alleged for the first time a third incident. Z.Y. said that on the only occasion in which he had been inside D.M.'s home, D.M. took him to a secluded corner in the house and asked permission to "[p]ut his thing in [Z.Y.'s] mouth again." Z.Y. said that he complied.

At trial, the State had the burden to prove beyond a reasonable doubt the elements of N.J.S.A. 2C:14-2(a)(1). One of those elements is an act of "sexual penetration," defined as "vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the

6

anus or vagina either by the actor or upon the actor's instruction." N.J.S.A. 2C:14-2(a)(1); N.J.S.A. 2C:14-1(c).[2]

To prove that element, the State relied primarily on Z.Y.'s pretrial statement to the police officer, which was admitted into evidence pursuant to N.J.R.E. 803(c)(27), and on Z.Y.'s testimony before the Family Part judge at trial. At trial, Z.Y. testified about the two incidents reported in his statement. He added to his account of the first incident in the stairwell an allegation that, on that occasion, D.M. attempted anal penetration. Z.Y. said that it "hurt a little bit," that he told D.M. to stop, and that D.M. complied. Z.Y. also testified about the second alleged incident in the stairwell and the alleged incident at D.M.'s home.

On cross-examination, Z.Y. admitted using a video-chat application to try to contact D.M., and admitted sending D.M. a message on that application. A screenshot of the message, which read "[s]o 69, let me c ur cock," was admitted into evidence.

D.M. testified that all of Z.Y.'s allegations were false. He stated that Z.Y. persistently tried to contact him via the video-chat application and identified the explicit message as a message sent by Z.Y. to him. D.M. and

---

[2] N.J.S.A. 2C:14-1(c) also provides that "[t]he depth of insertion shall not be relevant as to the question of commission of the crime."

7

two friends who testified on his behalf recounted incidents in which Z.Y. approached D.M. and others and made sexually explicit comments.

Following the trial, but prior to the Family Part judge's adjudication decision, D.M. requested that the judge consider third-degree endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4(a)(1), as a lesser-related offense of first-degree aggravated sexual assault. In order to establish a violation of N.J.S.A. 2C:24-4(a)(1), the State had the burden to prove beyond a reasonable doubt that D.M. engaged in "sexual conduct which would impair or debauch the morals of the child." N.J.S.A. 2C:24-4(a)(1).

The State agreed with D.M.'s counsel that there was a rational basis in the evidence for the endangering charge, and consented to the request. The court reopened the matter and heard supplemental closing arguments addressing the endangering offense.

C.

In a written decision, the court made detailed credibility findings. Concluding that Z.Y. provided consistent and specific testimony about the three alleged incidents, the court found him credible. It commented that although D.M. had testified "confidently, precisely, and articulately," and appeared to be "a mild-mannered and likable young man," his credibility was diminished because he was "inauthentic" and "trying to sell himself." The

8

court found Z.Y.'s mother to be highly credible, and viewed the friends whom D.M. called as fact witnesses to be "earnest" witnesses with little information relevant to the case.

The court found that the State failed to prove beyond a reasonable doubt a critical element of the aggravated sexual assault charge: sexual penetration. It found the evidence of oral penetration to be "unclear and undeveloped," noting that although "there was some evidence of brief oral penetration, it did not reach the threshold of beyond a reasonable doubt." The court also found the State's proofs unclear and insufficient with respect to whether D.M. had anally penetrated Z.Y. Accordingly, the court declined to adjudicate D.M. delinquent on the charge of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1).[3]

The court found, however, that the State had satisfied its burden of proof with respect to the lesser-related offense of third-degree endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4(a)(1). After noting the undisputed fact that Z.Y. was a "child" within the meaning of that statute, the court determined that D.M. knowingly engaged in sexual conduct which would

---

[3] The court also declined to adjudicate D.M. delinquent on the lesser-included offenses of attempted aggravated sexual assault under N.J.S.A. 2C:14-2(a)(1), N.J.S.A. 2C:5-1, and N.J.S.A. 2C:1-8(d)(2), criminal sexual contact under N.J.S.A. 2C:14-3(b), or sexual assault under N.J.S.A. 2C:14-2(b), citing elements of each of those offenses that were unsupported by the evidence.

"impair or debauch" Z.Y.'s morals. The court found beyond a reasonable doubt that in the two incidents in the school stairwell, D.M. "exposed his penis to Z.Y., sought Z.Y. to touch his penis with his mouth, and had his penis physically touch Z.Y.'s buttocks." It further concluded that in the third incident, in D.M.'s home, D.M. "sought Z.Y. to touch his penis with his mouth." The court found that these acts "would tend to debauch and impair the morals of a child" within the meaning of N.J.S.A. 2C:24-4(a)(1), and adjudicated D.M. delinquent as to that offense.

Three months later, the court held a disposition hearing pursuant to N.J.S.A. 2A:4A:43. Addressing one of the dispositional factors prescribed by N.J.S.A. 2A:4A-43(a), "[t]he nature and circumstances of the offense," the court stated:

> The record should be very clear. This is a very serious offense. And I will say the following. I adjudicated [D.M.] to a third degree, but quite frankly, the elements of the first[-]degree offense were met.
>
> The [c]ourt, in conferring with counsel, considered a lesser[-]related offense really as a humanitarian gesture to [D.M.] and gave him each and every conceivable benefit of the doubt in order to downgrade it to a third[-]degree in light of his lack of a prior record, his extremely devoted grandmother, his trials and tribulations, his active and noble extracurriculars.
>
> But if one were to really look at the evidence that was presented and one were to be honest about assessing that evidence, there is no doubt in the eyes of the [c]ourt

10

that the elements of the first[-]degree offense have been made and surely an attempt.

So for the purposes of any reviewing court, if a reviewing court is left, as it might be, scratching its head, how come the [c]ourt didn't adjudicate [D.M.] based upon the overwhelming [evidence] that the [c]ourt credit[ed], there is the [c]ourt's response. It was -- in the [c]ourt's judgment the elements were met. It was the [c]ourt['s] effort to accord the Defense, as he is entitled, every conceivable benefit of the doubt.

The court imposed on D.M. three years' probation, ordered that he undergo treatment in an outpatient residential program, and mandated his compliance with Megan's Law requirements.

D.

D.M. appealed his juvenile adjudication and disposition, challenging the sufficiency of the evidence supporting the Family Part judge's finding of delinquency with respect to the charge of endangering the welfare of a child, and raising three other issues not germane to this appeal. The State and D.M. briefed the issues raised. Neither party requested oral argument in the Appellate Division pursuant to Rule 2:11-1(b); according to the State, it did not request oral argument because the issues raised by D.M. were governed by settled law.

The Appellate Division panel sua sponte ordered the parties to submit supplemental briefs on a question it characterized as an expansion of D.M.'s

11

challenge to the sufficiency of the evidence: "whether the lack of a finding of penetration or coercion undermines the delinquency finding of endangering the welfare of a child, in light of the four-year age difference required for a delinquency finding of sexual assault" under N.J.S.A. 2C:14-2(b). D.M., 451 N.J. Super. at 423. As a result of the panel's order, the State requested oral argument pursuant to Rule 2:11-1(b), and D.M. did not oppose that application. The panel, however, denied the State's request.

The panel reversed D.M.'s delinquency adjudication, based on its resolution of the question it had raised sua sponte. Id. at 426-28. The panel acknowledged that "sexual conduct," which would impair or debauch the morals of the child, was undefined in N.J.S.A. 2C:24-4(a)(1). Id. at 426. It concluded, however, that the Legislature sought to limit the endangering statute, as applied to juveniles, to cases in which the juvenile's conduct also would give rise to a charge of either sexual assault, N.J.S.A. 2C:14-2, or criminal sexual contact by force or coercion, N.J.S.A. 2C:14-3(b). Id. at 424-25, 428. Citing the sexual penetration element of N.J.S.A. 2C:14-2(a), and the age disparity element of N.J.S.A. 2C:14-2(b), the panel held that "[t]he Legislature did not intend sexual behavior between children close in age not involving penetration, which it specifically exempted from the criminal

12

statutes, to nonetheless be included within the crime of child endangerment." Id. at 427.

Based on a finding that N.J.S.A. 2C:24-4(a)(1) was ambiguous, and invoking the rule of lenity, the panel reversed D.M.'s adjudication of delinquency. Id. at 428. It reasoned that "[a]lthough D.M. engaged in behavior that would generally be considered sexual conduct with another child, the sexual contact [in this case] was exempted from criminal liability by a specific statute." Id. at 427. The panel did not consider the remaining issues raised by D.M. Id. at 423.

We granted the State's petition for certification. 231 N.J. 553 (2017). We also granted the Attorney General's application to appear as amicus curiae.

## II.

### A.

The State observes that N.J.S.A. 2C:24-4(a)(1)'s plain language requires proof of only two elements: that the victim is a child, and that the defendant engages in "sexual conduct" that would impair or debauch the morals of the child. It argues that because N.J.S.A. 2C:24-4(a)(1) does not cross-reference N.J.S.A. 2C:14-2, the Court should not infer that the State must prove the elements of N.J.S.A. 2C:14-2 when a juvenile is charged under N.J.S.A.

2C:24-4(a)(1).  It asserts that the Appellate Division panel should have granted its unopposed motion for oral argument after sua sponte raising a new issue.

B.

D.M. contends that N.J.S.A. 2C:24-4(a)(1) and the sexual assault statutes should be construed in tandem because they serve the same legislative goal.  He argues that the Legislature did not enact the endangering statute to criminalize peer-to-peer adolescent sexual experimentation that is expressly excluded from the sexual assault statutes.  D.M. asserts that in accordance with the rule of lenity, the Court should resolve any ambiguity in N.J.S.A. 2C:24-4(a)(1) in his favor.

C.

The Attorney General asserts that the Legislature's omission of penetration, force, coercion, and age disparity elements from N.J.S.A. 2C:24-4(a)(1) evinces its intent to exclude those elements from the offense of endangering the welfare of a child.  The Attorney General views the court's comments at D.M.'s disposition to reveal that the court improperly downgraded the charge from a first-degree offense to a third-degree offense based on sentencing factors irrelevant to adjudication.

14

III.

A.

In the appeal of a juvenile delinquency adjudication, "[o]ur standard of review is narrow and is limited to evaluation of whether the trial judge's findings are supported by substantial, credible evidence in the record as a whole." State in Interest of J.P.F., 368 N.J. Super. 24, 31 (App. Div. 2004) (citing State v. Locurto, 157 N.J. 463, 471 (1999); State v. Johnson, 42 N.J. 146, 161 (1964)). We determine whether those findings "could reasonably have been reached on sufficient credible evidence present in the record as a whole." State in Interest of S.B., 333 N.J. Super. 236, 241 (App. Div. 2000) (citing Locurto, 157 N.J. at 471; Johnson, 42 N.J. at 162). "If we are satisfied that the findings and result meet this criterion, our task is complete, and we may not disturb the result, even though we may feel we may have reached a different conclusion." Ibid. (citing Locurto, 157 N.J. at 471; Johnson, 42 N.J. at 162). "On the other hand, a trial judge's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

## B.

The statutory construction issue raised by the Appellate Division panel -- whether a juvenile's sexual conduct with another juvenile close in age that does not involve sexual penetration, force, or coercion may nonetheless constitute "sexual conduct which would impair or debauch the morals of the child" under N.J.S.A. 2C:24-4(a)(1) -- was not discussed by the parties in their original appellate briefs. That question, first raised by the panel after the initial briefs were filed, substantially expanded the issues on appeal and the potential impact of the appeal on other juvenile adjudications. Recognizing that fact, the panel ordered supplemental briefs.

So that counsel could address that important -- and ultimately dispositive -- issue in argument, the panel should have granted the State's unopposed motion for oral argument. We caution appellate courts in similar settings involving expanded issues to seriously consider granting motions for oral argument, even when no party requested argument when it filed its original brief.

## C.

## 1.

We review the Appellate Division panel's interpretation of N.J.S.A. 2C:24-4(a)(1) pursuant to familiar principles of statutory construction. Our

16

task is to "ascertain the Legislature's intent, reflecting its chosen language, and to give the words of the statute 'their generally accepted meaning.'" State v. Bolvito, 217 N.J. 221, 228-29 (2014) (quoting State v. Marquez, 202 N.J. 485, 499 (2010)); see also N.J.S.A. 1:1-1. We must "effectuat[e] the legislative plan as it may be gathered from the enactment [when] read in full light of its history, purpose and context." Bolvito, 217 N.J. at 229 (alterations in original) (quoting Koch v. Dir., Div. of Taxation, 157 N.J. 1, 7 (1999)).

"When the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." State v. Shelley, 205 N.J. 320, 323 (2011). A court "seek[s] out extrinsic evidence, such as legislative history, for assistance when statutory language yields 'more than one plausible interpretation.'" Id. at 323-24 (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

If a question concerns more than one statutory provision, "[r]elated parts of an overall statutory scheme can . . . provide relevant context." Beim v. Hulfish, 216 N.J. 484, 498 (2014) (alterations in original) (quoting DYFS v. A.L., 213 N.J. 1, 20 (2013)).

2.

The Appellate Division's decision relies on Code provisions set forth in three statutes: the sexual assault statute, N.J.S.A. 2C:14-2; the criminal sexual

17

contact statute, N.J.S.A. 2C:14-3(b); and the endangering the welfare of a child statute, N.J.S.A. 2C:24-4(a)(1).  We review each in turn.

D.M. was charged with first-degree aggravated sexual assault pursuant to N.J.S.A. 2C:14-2(a)(1), which provides, "[a]n actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person" if that person "is less than 13 years old."

Thus, in a juvenile adjudication premised on an alleged violation of N.J.S.A. 2C:14-2(a)(1), the State must prove that the juvenile committed an act of sexual penetration on a victim less than thirteen years of age, but need not prove that the juvenile is four or more years older than the victim.  Ibid.

Another section of N.J.S.A. 2C:14-2 cited by the Appellate Division criminalizes acts of sexual contact on the basis of the age disparity between the actor and the victim.[4]  Pursuant to N.J.S.A. 2C:14-2(b), an actor is guilty of sexual assault, a second-degree crime, if he "commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim."  A juvenile may be adjudicated delinquent under that provision if the State proves beyond a reasonable doubt that the juvenile

---

[4] "Sexual contact" is defined as the "intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor."  N.J.S.A. 2C:14-1(d).

18

committed an act of sexual contact -- whether or not that contact involved sexual penetration, force, or coercion -- provided that the juvenile charged is four or more years older than the alleged victim. Ibid.

Finally, under N.J.S.A. 2C:14-3(b), "[a]n actor is guilty of criminal sexual contact," a fourth-degree offense, "if he commits an act of sexual contact with the victim under any of the circumstances set forth in [N.J.S.A. 2C:14-2(c)] (1) through (4)." If the State seeks a delinquency adjudication pursuant to N.J.S.A. 2C:14-3(b) based on the offense defined in subsection (c)(1) of N.J.S.A. 2C:14-2, it must prove that the juvenile committed an act of sexual contact with a victim using "physical force or coercion." N.J.S.A. 2C:14-2(c)(1).

In contrast to the offenses cited by the Appellate Division panel, third-degree endangering the welfare of a child requires proof only that the victim is a child and sexual conduct by any person which "would impair or debauch the morals of the child." N.J.S.A. 2C:24-4(a)(1). The endangering statute provides:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.

19

[N.J.S.A. 2C:24-4(a)(1).][5]

The phrase "sexual conduct which would impair or debauch the morals of the child" is undefined in the endangering statute. See ibid. As we observed in the appeal of an adult defendant's conviction of child luring and attempted child endangerment, "[a]lthough the term 'sexual conduct' is not defined, clearly included are sexual assault[] and sexual contact." State v. Perez, 177 N.J. 540, 553 (2003) (quoting State v. Perez, 349 N.J. Super. 145, 153 (App. Div. 2002)).

3.

Against that backdrop, we review the Appellate Division panel's interpretation of N.J.S.A. 2C:24-4(a)(1).

We concur with the Appellate Division panel that D.M. could not be adjudicated delinquent of the lesser-included offenses of aggravated sexual assault under either N.J.S.A. 2C:14-2(c), absent proof of sexual penetration,

---

[5] N.J.S.A. 2C:24-4 clearly is not limited to adults and may be applied to juveniles. See N.J.S.A. 2C:24-4(a)(1) (providing that any "person" who "engages in conduct or who causes harm" to a child, as described in that subsection of the statute, may be found guilty of the offense); N.J.S.A. 30:4-123.53a(c) (charging Juvenile Justice Commission with the responsibility to provide written notice to the prosecutor when it anticipates the release of a juvenile adjudicated delinquent on a charge of endangering the welfare of a child); see also State in Interest of A.B., 328 N.J. Super. 96, 99, 101 (Ch. Div. 1999) (holding that a juvenile can be adjudicated delinquent pursuant to N.J.S.A. 2C:24-4(b)(3), a provision of the endangering statute that criminalizes child pornography).

force, or coercion, or under N.J.S.A. 2C:14-3(b), absent proof of force or coercion. D.M., 451 N.J. Super. at 424-25. We further agree with the panel that D.M. could not be adjudicated delinquent under N.J.S.A. 2C:14-2(b), as a lesser-included offense of aggravated sexual assault, because D.M. and Z.Y. are fewer than four years apart in age. Id. at 425.

We part company with the panel, however, with respect to its construction of N.J.S.A. 2C:24-4(a)(1). We find no evidence in the endangering statute's plain language that the Legislature intended to incorporate the penetration or age-disparity elements of the sexual assault statute, or the force or coercion elements of the criminal sexual contact statute, into the endangering offense. We do not agree that in order for a juvenile, who is fewer than four years older than the victim, to be adjudicated delinquent under N.J.S.A 2C:24-4(a)(1), there must be proof of sexual penetration, force, or coercion. See id. at 428. The endangering statute simply makes no mention of the elements cited by the panel. See N.J.S.A. 2C:24-4(a)(1).

Moreover, when the Legislature seeks to import a part of one Code provision into another, it expresses that intent in unambiguous terms. See, e.g., N.J.S.A. 2C:14-3(a) (explicitly cross-referencing N.J.S.A. 2C:14-2(a)(2)-(7)); N.J.S.A. 2C:14-3(b) (explicitly cross-referencing N.J.S.A. 2C:14-2(c)(1)-(4)); N.J.S.A. 2C:33-12(c) (explicitly cross-referencing N.J.S.A. 2C:34-2, -3,

21

and -4); N.J.S.A. 2C:33-28(a) (explicitly cross-referencing definitional provision of N.J.S.A. 2C:33-29). Had the Legislature intended to limit the application of N.J.S.A. 2C:24-4(a)(1) to cases in which the juvenile has also violated specific provisions of N.J.S.A. 2C:14-2 or N.J.S.A. 2C:14-3, as the panel suggests, it would have done so by adding language to that effect. It has not done so.[6] See In re Expungement of the Arrest/Charge Records of T.B., 236 N.J. 262, 275 (2019) (declining to interpret a statute to exclude certain offenses from a required assessment when the Legislature could have expressed its intention to exclude those offenses, "[b]ut it did not").

Accordingly, we do not adopt the Appellate Division's restrictive view of the endangering statute. In appropriate settings, N.J.S.A. 2C:24-4(a)(1) as currently drafted may apply to a juvenile, even when the specific conduct

---

[6] N.J.S.A. 2C:24-4(a)(1)'s legislative history confirms that, following its 1979 amendment, the endangering statute was not limited to conduct that would also violate N.J.S.A. 2C:14-2 or -3. Although the Assembly Judiciary Committee's statement to the statute's 1979 amendments provides that those amendments "should be read in combination with" the amendments to the sexual assault statute, it does not state or imply that the endangering statute should be limited to offenses set forth in the sexual assault statute amendments. A. Judiciary, Law, Pub. Safety & Defense Comm.'s Statement to A. 3279 78-79 (June 28, 1979). To the contrary, the Statement makes clear that the endangering statute's 1979 amendments were intended to incorporate "[s]ocially unacceptable sexual conduct between a person over 16 and a person under 16, which may not otherwise be covered by 2C:14-2 or 2C:14-3," and to make such conduct "a third or fourth degree crime." Id. at 79.

22

involved does not involve sexual penetration, force, or coercion and the juvenile and alleged victim are fewer than four years apart in age.

4.

The contrasting interpretations of N.J.S.A. 2C:24-4(a)(1) discussed above signal a need for legislative review of the endangering statute as it applies to juvenile settings such as this appeal. As D.M.'s case illustrates, it would be helpful if the statutory language "sexual conduct which would impair or debauch the morals of the child" provided clearer guidance to courts, counsel, and the public in settings involving sexual conduct by juveniles close in age. Indeed, laws with language analogous to that of our current endangering statute were criticized in the commentary to Model Penal Code (MPC) § 230.4, which addressed the offense of endangering the welfare of a child; the MPC's drafters rejected language similar to that of N.J.S.A. 2C:24-4(a)(1), in favor of language tethering the offense to a defendant's violation of "a duty of care, protection and support." MPC § 230.4 (Am. Law Inst. 1980).[7]

---

[7] When the Legislature enacted the first version of our Code's endangering statute, N.J.S.A. 2C:24-4(a)(1), it based the statute's language in part on MPC § 230.4. Cannel, N.J. Criminal Code Annotated, cmt. 1 on N.J.S.A. 2C:24-4 (2018). Generally consistent with MPC § 230.4, that version of the statute criminalized conduct by "[a]ny person having a legal duty for the care of a child or who has assumed responsibility for such care," when that person "causes such child such harm as would make such child an abused or neglected child" as defined in N.J.S.A. 9:6-8.21. L. 1978, c. 95. In 1979, the Legislature amended N.J.S.A. 2C:24-4(a)(1) to expand its reach beyond persons with a

23

As the MPC's drafters noted, "[s]tatutes broadly condemning any conduct that contributes to the delinquency of a minor contravene the general precept that criminal laws should state their proscriptions with fair specificity and precision." MPC, cmt. 2 on § 230.4, at 449 (1980).

Should it choose to do so, the Legislature could amend N.J.S.A. 2C:24-4(a)(1) to clarify its intent with respect to the statute's application to juvenile adjudications.

D.

The Family Part judge's credibility assessment and core factual findings -- that D.M. "exposed his penis to Z.Y., sought Z.Y. to touch his penis with his mouth, and had his penis physically touch Z.Y.'s buttocks," but that the State fell short of proving oral or anal penetration -- fully supported the judge's determination on the two offenses considered. Had the court not deviated from its written decision in its later comments, there would be no basis to overturn that determination in this appeal.

The court's statement at the disposition hearing, however, directly contravened the findings set forth in its adjudication. Addressing a prospective appellate court that might review the case, the court stated that the

---

legal duty or assumed responsibility for the care of a child, and to criminalize "sexual conduct" by any person "which would impair or debauch the morals of the child." L. 1979, c. 178, § 46. That language remains in effect today.

24

elements of the first-degree offense were met but that it had "downgrade[d]" the offense to the third-degree charge of endangering the welfare of a child. The court indicated that this "downgrade" was not due to a deficiency in the State's proofs, but to factors personal to D.M.: the lack of prior offenses on his record, the grandmother whose devotion to D.M. had impressed the court, D.M.'s "trials and tribulations," and the juvenile's admirable extracurricular activities.

The juvenile's personal characteristics are an important factor at the disposition stage, but they do not warrant a "downgrade" of his charges at the adjudication stage, or any other finding inconsistent with the proofs. In accordance with Rule 1:7-4(a), the court sitting as factfinder in a juvenile adjudication must find the facts that the State has proven beyond a reasonable doubt; it has no authority to nullify its findings in order to achieve a more lenient disposition, or for any other purpose. See Locurto, 157 N.J. at 470 (noting that Rule 1:7-4(a) requires "a trial court sitting without a jury to 'state clearly its factual findings and correlate them with the relevant legal conclusions'" (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980))). When it conducts a juvenile adjudication proceeding, the Family Part must hold the State to its burden of proof beyond a reasonable doubt. When the State meets

that burden, however, the court must make findings consistent with the evidence.

In this matter, the court disclosed at the disposition that, although the State proved N.J.S.A. 2C:14-2(a)(1)'s sexual-penetration element, the court discounted that proof and adjudicated the juvenile delinquent on the lesser-related offense of endangering under N.J.S.A. 2C:24-4(a)(1). That disclosure undermines our confidence in both determinations. In its wake, it is simply unclear what facts the court actually found and what facts it did not find.

Accordingly, although we do not share the Appellate Division panel's interpretation of N.J.S.A. 2C:24-4(a)(1), we concur with its conclusion that D.M.'s adjudication pursuant to that statute must be reversed.

## IV.

We affirm on other grounds the judgment of the Appellate Division.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion. JUSTICE ALBIN filed a concurrence.

State in the Interest of D.M., a Juvenile

JUSTICE ALBIN, concurring.

I agree with the majority that D.M.'s juvenile adjudication for endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), must be reversed. I also concur with the majority that N.J.S.A. 2C:24-4(a)(1) is in need of legislative review, in my view because of its potential to be overread. Unlike the majority, however, I would give some guidance on the limitations of the endangering statute when applied to children close in age who engage in consensual sexual conduct.

The endangering statute is a very broad and vaguely written statute and therefore may be susceptible to varying interpretations by different prosecutors and judges, particularly when applied to close-in-age juveniles involved in consensual sexual conduct. Therein lies the danger. We should construe the endangering statute in a sensible manner -- consistent with the Legislature's probable intent -- so that it does not conflict with related statutes or exceed its

1

constitutional bounds.  See State v. Burkert, 231 N.J. 257, 276-77 (2017); Tumpson v. Farina, 218 N.J. 450, 467 (2014).

A criminal statute must give fair notice to a reasonable person of the conduct the law prohibits.  The vice of vague laws is that they lack explicit standards and therefore lend themselves to abuse.  See Town Tobacconist v. Kimmelman, 94 N.J. 85, 118 (1983) ("A law is void as a matter of due process if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'"  (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926))).  Vague laws are constitutionally suspect because they may ensnare the innocent who are unable to discern the dividing line between permissible and prohibited conduct, because such laws may be subject to arbitrary and discriminatory enforcement, and because they delegate to prosecutors and judges the resolution of issues on a subjective basis.  State v. Cameron, 100 N.J. 586, 591 (1985) (citing Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972)).

The endangering statute criminalizes "sexual conduct which would impair or debauch the morals of the child."  N.J.S.A. 2C:24-4(a)(1).  The meaning of the endangering statute is far from clear, particularly when applied to consensual conduct between close-in-age juveniles.  The sexual offense statutes of the Code of Criminal Justice, however, are very clear.  Those

2

statutes do not criminalize sexual contact between consenting juveniles who are less than four years apart in age. N.J.S.A. 2C:14-2, -3. We should assume that the Legislature did not intend to place in conflict related statutes that speak to a common subject. See In re Registrant J.G., 169 N.J. 304, 334 (2001) ("When this Court is confronted with conflicting statutory provisions that relate to a common subject, we strive to reconcile the inconsistent provisions and to interpret them harmoniously."). We cannot ascribe to the Legislature the intent to criminalize under the broadly written endangering statute the very conduct that the more specific sexual offense statutes render permissible -- sexual contact between close-in-age consenting juveniles. See State v. Robinson, 217 N.J. 594, 609 (2014) ("[A] canon of statutory construction directs that a specific statute generally overrides a general statute.").

Even in the absence of further legislative direction, I would not leave to the discretion of prosecutors and judges, for example, whether a consensual sexual act between a seventeen-year-old high school senior and a fifteen-year-old high school sophomore is conduct that debauches the morals of a minor under N.J.S.A. 2C:24-4(a)(1) when that conduct is clearly not criminal under N.J.S.A. 2C:14-2 or -3. Whatever else the endangering statute may prohibit, it

3

does not criminalize sexual conduct between consenting juveniles specifically designated as not criminal under N.J.S.A. 2C:14-2 or -3.

Without such limitations, the endangering statute is vulnerable to a future as-applied constitutional challenge. Prosecutors therefore must act with caution. I doubt that most prosecutors would charge a juvenile who engaged in a consensual sexual act with another juvenile of similar age with child endangerment when such conduct does not contravene N.J.S.A. 2C:14-2 or -3. The child endangerment statute was never intended to criminalize consensual sexual experimentation between close-in-age juveniles that does not violate our sexual offense statutes, N.J.S.A. 2C:14-2 and -3.

The Legislature can now make that point clear.

4